Good morning, your honors. May it please the court, Michael Tanaka, appearing on behalf of Mr. Ferguson. The issue here is whether there was evidence to support the three violations the supervised release of the district court found. And I submit there was not. We have to look at this in sort of a common sense manner in terms of what the conditions of supervised release were and whether he violated them. So, for example, one of the conditions that the district court found that he violated was that he wasn't truthful in his monthly report. And the basis for that was he reported employment at R.Y. Rodriguez. Well, the evidence was undisputed that he was doing work for Miss Rodriguez. He had done that in the past. It was also undisputed that he reported a salary of one dollar per week for one hour's worth a week of work. Clearly, there was no misrepresentation or no one could understand that he was working in the sense that he had some full time job there. He had a part time job there. One dollar a week gets you pretty much nothing. I mean, what you can buy for a dollar these days. I thought the evidence was that he had stopped working for that fellow. For Rodriguez, that he had stopped back in April or June, May or June. He apparently had a regular consulting job with them and then he quit doing that. Right. But that's all. But what he put on the report is consistent. The report would suggest that he was still working. It would suggest that he was doing exactly what the evidence showed he was doing. She talked to him on doing some of the consulting informally. It's a preponderance of the evidence. Right. But if you look at the totality of that section, one dollar. I mean, that's clearly he's not misrepresenting anything. One thing that I found a little bit troublesome was that he was working for his wife. Yes. That was the third or I forget which number that was. It was allegation number five. There doesn't seem to be any evidence that he was really employed by her. And more than that, I mean, is that the condition was to report a change in employment. Whatever he was doing with his wife's business, likely he had done from the time of his release. And whatever it was, there was no evidence that it was actually working there. He was employed by her. Yes, he was employed by them. Can I come back to the employment and the one dollar? Was this form filled out electronically? Yes. Was that the problem? Yes. It's on a website. And he says that he would not accept a zero. That was the suggestion, yes. It wouldn't accept a zero. There was no evidence of that. There was just the lawyer's question. There was just the lawyer's question. But respectfully, Your Honor, the difference between one dollar and zero dollars is of no consequence. But where do you draw that line? If it had been a hundred dollars, would that be an allegation? A hundred dollars, yeah, might be something. But one dollar obviously is a token at that. Well, on the other hand, the form represents that he's employed. But the heading is employment, and then he puts in— And I looked at the two months in question. I didn't see in the record months before that, although they might have been there. I missed them. But, I mean, he's employed or not employed, and he keeps listing himself as employed. That's—as I argued in my brief, Your Honor, that's—whether it's employment, it's certainly close. I mean— Got it. Okay. And actually, the common sense thing is, is he misrepresenting—I mean, what's the purpose of this form? They want to know whether he's employed. Is he working a job, right? And you look at that, and if it says one dollar for one hour a week, who's going to—no one's going to think that that's a job. And that's the report, that he chose to put it down and that he gave too much information instead of not enough. It seems hardly a reason to send him back to prison, which is the point here. He already served his time, right? He's already served his time. But nonetheless, his supervisory release was extended. He would have been off supervisory release by now, and I think he has another two years at least. So what if, just hypothetically, the court were to say, all right, maybe one of these we'd reverse, but the others are fine? Does that really affect your client's position at this point? I suggest that if that's what the court ultimately finds, that you— that you remand because, as in any case in district court, once you get rid of part of it, then it changes the whole calculus. So at the very least, the judge should have the opportunity to say, okay, if this part is not supported, maybe my decision on the sentence or the extending the term of supervisory release or the conditions of supervisory release might have been different. Could she reduce the amount of supervisory release? Yes. I mean, if you vacate the judgment, she certainly can do that. Okay. What was the underlying crime? I understand it's mail fraud, but could you describe it in a little more detail? I'm trying to figure out how sophisticated it is. Yeah, I'm a little bit disadvantaged because I wasn't part of that. I understood that it was some sort of investment scheme doing overseas, that he was working with a bunch of people in his church, and he continues to work with a bunch of people in his church, and they invested a lot of money and there was no return on that. The district court judge, the first sentencing, seemed to believe that, you know, there was not—this was not a bad person. He didn't come out to intentionally defraud these people, at least at the outset. But beyond that, I can't tell you. What was the original sentence? Was it 70 months? It was 70 months, yes, which was the low guideline age. Why don't we have the other side, and then you've got a lot of time to respond. Good morning, Your Honors. May it please the Court, Kathy Yu on behalf of the United States. Before Yu was a defendant that engaged in a pattern of deception. First, he duped his underlying victims, over 30 of them, in investing in a scheme in which he promised returns of up to 20%. Those losses amounted over a staggering $3.5 million. Saddled with that debt, he then started supervised release and then attempted to deceive his probation officer relating to his employment and his assets, with which the District Court agreed. Now he stands before you asking you to second-guess and re-weigh the factual determinations made by the District Court, all in an attempt to avoid accountability. However, based on the applicable standard of review, defendant cannot show that the factual findings by the District Court were so illogical, so implausible, or without any inferences from the factual record to be made. Now, if I may, I'd like to begin with a little context. As defendant said in his reply papers, context matters. And so, all three of these allegations, we've been talking about them separately, but they actually occurred very close in time. In May 2016 was when defendant's wife filled out the loan application. Just one month later, defendant signed the interspousal deed transfer. At that same time, in July and August, he reported that he continued to work for R. Ry Rodriguez, when in fact he wasn't. And just a month later, around the same time, in July 2016, there's this Yelp review saying that defendant was helpful in scheduling appointments and following up. So did you draw from that that he was employed by his wife? Not just that. No, that's not my question. Do you infer from that that he was employed by his wife? Is that a reasonable inference that he was employed by his wife when you read this Yelp review? Based on that alone, no. But there are other indicators in the record. What were the other indications that he was employed by his wife, getting paid by her, compensation and whatnot? The other indicators in the record include that his phone number was used, and that's the same number that he reported to probation as his primary contact number. That's a sign that he was employed. That is a sign. His wife. That is a sign. Another sign, for example, Your Honor, is that around the same time that he said he stopped working for R. Ry Rodriguez is when he started doing this work on behalf of his wife. And I think it's logical for this court, this district court. Was he just helping out his wife? He could have been. Sure, that's plausible. Is there a distinction in your view between being employed by his wife and helping his wife? I think in this case they're the same. He was doing work to benefit her. So you say there's no distinction? There is a distinction, but I think what defendant did here was tantamount to being employed by his wife. And do we have any evidence that he was paid? Anything at all that shows that the wife is compensating him? If she's running a business, one of the ways you like to run a business is that you like to take into consideration all the money you pay your employees so that that gets written off as a cost and you therefore don't have to count your profits so high. Is there any evidence at all that she paid him? There isn't, Your Honor, but there is. And if there's no evidence that she paid him, was he employed by her? I mean, I don't want to make this an evidentiary question. If she did not pay him, was he employed? I think in this case he was still employed by her. Even though he wasn't being paid? Yes, Your Honor. So how do you get there? In addition to doing work on behalf of his wife, there's also testimony in the record that monthly restitution is tied to his individual income, not the household. And I think the district court did infer and could have inferred from this record that he was working for her in that capacity. He was employed by her but wasn't being paid by her to avoid having to pay restitution. I see. So his restitution obligation was tied to the amount of money he was bringing in. Every month. And then, if I may, Your Honor, there was a discussion about the dollar amount, and defense counsel said a dollar a week gets you nothing. It's a token. In this case, it actually gets you a lot because defendant, by stating that he was being employed by R.I. Rodriguez when he, in fact, wasn't, it did two things. One, it presented that he was gainfully employed and so the probation officer wouldn't be following up to say, hey, you need to get another job, you still have $3.5 million outstanding. If he's only getting a dollar, and if I'm the probation officer and I really want him to be earning money, for example, so that he can start paying off the restitution, I think when he says I'm only earning a dollar, I might have a word with him. Sure, and I can't speak to the workload of probation officers and how many people that they're supervising, and he had only done this for two months, and then the probation officer followed immediately up with his employer to see what was going on, and that's when it was discovered, and Shirley Rodriguez, the employer, told the probation officer that he wasn't, in fact, employed by them. But as to the dollar a week, it gets defendant something else. It gets him, if he says he's only making a dollar a month, he pays the minimum of restitution. So typically the amount is either 10% of your monthly income or the $100 a month, and by saying he's only making a dollar, then he only has to pay the $100 a month versus more, and at the same time, again, context, he's working on behalf of his wife, helping her grow his business without being compensated, without listing that, and so none of that is going towards restitution, and the district court, who was in a unique position to evaluate the credibility of the three witnesses that testified before it found that. And what was the restitution obligation? You just told me that the minimum is $100 a month. Assuming he's earning more money, how is that restitution amount calculated? It's calculated per month, and I believe it's 10% of that income. Of the gross? I believe so, Your Honor. And again, there was some reference to common sense by defense counsel, and I would submit to you, Your Honors, based on this record before this district court, who's in the unique position to evaluate the credibility of the witnesses that testified before her, that it was commonsensical and it was logical and it was plausible that defendant had violated each of these supervised release conditions. The standard of review isn't that whether it was possible or plausible, not whether this court would disagree. It's whether there are any facts supporting the district court's findings, Your Honors, and I would submit that there was. So assume for a moment that one of these violations gets set aside. Do you agree with counsel that we should then remand it to the district court for further consideration of the sentence? I think if you reverse on two but you affirm on at least one, it would be still sufficient to abstain the revocation of supervised release, and I agree with my colleague that you would vacate the judgment at least to the overturned counts and then remand for the district court to resentence because, as he stated, it does affect defendants going forward to supervised release. Thank you. Are there any other questions from the court? Then we'll submit on papers. Thank you. This case, though, isn't about avoiding restitution. I assume that that may be the district court's concern, but we still have to go on the violations. And one thing the government just said didn't make a lot of sense to me, and that is by putting down only a dollar a month, that means that he was avoiding a restitution obligation because he wouldn't have to pay. But the violation alleged was that he was misleading the court in saying that he was employed, which in any case would seem to increase his restitution obligation. If what he should have said was left up blank, then that would obviously diminish his restitution obligation back down to the minimum, which is what happened. So I don't think that supports the argument. But beyond that, I think that the evidence here is thin to nonexistent on the violations, and so I urge you to reverse and fall. Thank you very much. Thank you both sides for your arguments. United States v. Ferguson submitted for decision.
judges: W. Fletcher, Paez, Gleason